IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAMARIAN AUSTIN, as dependent administrator of ILLIANA CLAIRE HEJLIK, J.S. #1, J.S. #2, J.S. #3, et al., | § § § § | |
| *Plaintiffs*, | § | Civil Action No. 4:21-cv-00774 |
| v. | § § | |
| CITY OF PASADENA, TEXAS, et al., | § | JURY DEMANDED |
| *Defendants.* | § § | |

DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

Defendants Officers Martin Aguirre, Police Service Officers (PSO) Joanna Marroquin, Darlene McCain, Ryan Whitehead ("the Officers") and the City of Pasadena, Texas move for final summary judgment for the following reasons:

TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES ..................................................................... iv

TABLE OF EXHIBITS ............................................................................ viii

NATURE AND STAGE OF THE PROCEEDING ...................................1

ISSUES BEFORE THE COURT................................................................1

SUMMARY OF THE ARGUMENT ........................................................1

SUMMARY OF EVIDENCE.....................................................................2

ARGUMENT AND AUTHORITIES.........................................................7

I.   The Officers did not violate the Constitution. ....................................7

   A.   The evidence proves the Officers exercised reasonable force in response to Shaw's resistance..........................................................7

   C.   The Officers did not deprive Shaw of essential medical care. ......................10

II.   Plaintiffs failed to refute the Officers' immunity. ...........................10

   A.   Existing *legal authority* did not fairly warn the Officers' that their actions were clearly unlawful. ...................................................10

   B.   Plaintiffs fail to identify *evidence* which would have informed every reasonable officer that the Officers' reaction to Shaw's resistance was clearly unlawful. ...........................................................13

III.   The City did not violate Shaw's rights. ..........................................15

   A.   The City is entitled to judgment because Shaw was not deprived of any right..........................................................................................16

B.   There is no evidence of an unconstitutional City policy promulgated or adopted by the City's policymaker. ................................................................16

   1.   Plaintiffs have not pointed to an actual policy that caused Shaw's death. 16

   2.   City Council is the City's policymaker. .......................................................17

   3.   There is no evidence the City's policymaker was deliberately indifferent to Shaw's rights. ..............................................................................................18

C.   Plaintiffs cannot demonstrate that an existing City policy was the "moving force" of any alleged deprivation of Shaw's rights. ......................................19

IV. There is no evidence that Shaw was denied a benefit of a perceived or actual disability. ....................................................................................................................20

CONCLUSION AND PRAYER .............................................................................21

CERTIFICATE OF SERVICE ...............................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Creighton*,
    483 U.S. 635 (1987)..................................................................................8

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................7

*Ashcroft v. al-Kidd*,
    563 U.S. 731 (2011)................................................................................11

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*,
    520 U.S. 397 (1997)..........................................................................15, 18

*Bennett v. City of Slidell*,
    728 F.2d 762 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016
    (1985)................................................................................................15, 19

*Brosseau v. Haugen*,
    543 U.S. 194 (2004)..........................................................................12, 14

*Brown v. City of Houston*,
    337 F.3d 539 (5th Cir. 2003) ..................................................................17

*City of Gladewater v. Pike*,
    727 S.W.2d 514 (Tex. 1987) ...................................................................17

*City of Los Angeles v. Heller*,
    475 U.S. 796, 799 (1986).........................................................................16

*City of San Antonio v. Rodriquez*,
    856 S.W.2d 552 (Tex. App.—San Antonio 1993, writ denied) ..............17

*City of Tahlequah v. Bond*,
    142 S. Ct. 9 (2021)..................................................................................11

*Dist. of Columbia v. Wesby*,
    138 S. Ct. 577 (2018).........................................................................10, 11

iv

*Fraire v. Arlington*,
    957 F.2d 1268 (5th Cir. 1992) ...........................................................16

*Frakes v. Masden*,
    No. H-14-1753, 2015 U.S. Dist. LEXIS 159158 (S.D. Tex. 2015),
    *aff'd sub nom. Frakes v. Ott*, 668 F. App'x 130 (5th Cir. 2016),
    *cert. denied*, 137 S. Ct. 835 (2017).................................................9

*Graham v. Connor*,
    490 U.S. 386 (1989)......................................................................7, 8

*Hare v. City of Corinth, Miss.*,
    74 F.3d 633 (5th Cir. 1996) (en banc) ............................................10

*Joseph v. Bartlett*,
    981 F.3d 319 (5th Cir. 2020) ............................................................9

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018)...............................................................11, 13

*Mendez v. Poitevant*,
    823 F.3d 326 (5th Cir. 2016) ............................................................8

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019) ..........................................................10

*Mullenix v. Luna*,
    577 U.S. 7 (2015) (per curiam)........................................................11

*Ontiveros v. City of Rosenberg*,
    564 F.3d 379 (5th Cir. 2009) ............................................................8

*Pfannstiel v. City of Marion*,
    918 F.2d 1178 (5th Cir. 1990) ........................................................14

*Pineda v. City of Houston*,
    291 F.3d 325 (5th Cir. 2002) ..........................................................16

*Piotrowski v. City of Hous.*,
    237 F.3d 567 (5th Cir. 2001) ..............................................15, 19, 20

*Rivas-Villegas v. Cortesluna*,
    142 S. Ct. 4 (2021).....................................................................11, 12

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ...............................................................16

*Saldana v. Garza,*
    684 F.2d 1159 (5th Cir. 1982) .............................................................12

*Saucier v. Katz,*
    533 U.S. 194 (2001)...............................................................................8

*Smith v. Brenoettsy,*
    158 F.3d 908 (5th Cir. 1998) ...............................................................18

*Surratt v. McClarin,*
    851 F.3d 389 (5th Cir. 2017) ...............................................................12

*Vann v. City of Southaven,*
    884 F.3d 307 (5th Cir. 2018) .........................................................7, 12

*Vincent v. City of Sulphur,*
    805 F.3d 543 (5th Cir. 2015) ...............................................................14

*Waganfeald v. Gusman,*
    674 F.3d 475 (5th Cir. 2012) ...............................................................14

*Wagner v. Bay City,*
    227 F.3d 316 (5th Cir. 2000) .........................................................12, 13

*White v. Pauly,*
    137 S. Ct. 548 (2017)....................................................................12, 13

*Whitley v. Hanna,*
    726 F.3d 631 (5th Cir. 2013), *cert. denied Whitley v. Hanna*, 134
    S. Ct. 1935 (2017).................................................................................9

*Windham v. Harris Cnty.*,
    875 F.3d 229 (5th Cir. 2017) ...............................................................20

*Worsham v. Pasadena,*
    881 F.2d 1336 (5th Cir. 1989) .......................................................15, 17

**Constitution**

U.S. Const. amend. IV ........................................................................7, 12

**Statutes**

Tex. Loc. Gov't Code Chapters 21 ......................................................17

Tex. Loc. Gov't Code Chapters 51......................................................17

Tex. Penal Code §§ 9.51–9.54............................................................18

Americans with Disabilities Act ..........................................................20

Rehabilitation Act ...............................................................................20

**Rules**

Fed. R. Civ. P. 56(a)............................................................................7

## TABLE OF EXHIBITS

Exhibit 1    Officer Martin Aguirre's declaration

Exhibit 2    PSO Darlene McCain's declaration

Exhibit 3    PSO Joanna Marroquin's declaration

Exhibit 4    PSO Ryan Whitehead's declaration

Exhibit 5    Chief of Police Joshua Bruegger's declaration

Exhibit 6    Kevin Stuart's declaration

Exhibit 7    Internal Investigation into In-Custody Death

Exhibit 8    Verification of Summary Judgment Evidence

Exhibit 9    Audio/video recording from the Pasadena lock-up

Exhibit 10   Officer Martin Aguirre's deposition excerpts

Exhibit 11   PSO Darlene McCain's deposition excerpts

Exhibit 12   PSO Joanna Marroquin's deposition excerpts

Exhibit 13   PSO Ryan Whitehead's deposition excerpts

Exhibit 14   City pf Pasadena' deposition excerpts

Exhibit 15   Plaintiff Shamarian Austin's deposition excerpts

Exhibit 16   Plaintiff Donna Thomas' deposition excerpts

Exhibit 17   TASER Activity Report

Exhibit 18   PSO Darlene McCain's Texas Commission on Law Enforcement Transcript

Exhibit 19   PSO Joanna Marroquin's Texas Commission on Law Enforcement Transcript

Exhibit 20   PSO Ryan Whitehead's Texas Commission on Law Enforcement Transcript

Exhibit 21   Pasadena Police Department Rules and Policies Manual

Exhibit 22   Pasadena Police Department Department-Wide and Division-Specific Procedures Manual

Exhibit 23   Pasadena Home Rule Charter and Ordinances

Exhibit 24   Rules of the City of Pasadena Police Officers' Civil Service Commission

Exhibit 25   Governmental records verification

## NATURE AND STAGE OF THE PROCEEDING

1.      On March 9, 2021, Plaintiffs filed suit against [Doc. 1] and amended their complaint on May 5, 2021, [Doc. 15]. The Court denied the City's motion to dismiss, but dismissed claims asserted against Officer Aguirre, other than the bystander claim. [Doc. 39]. Defendants move for summary judgment because the evidence establishes that no reasonable jury could enter judgment in Plaintiffs' favor.

## ISSUES BEFORE THE COURT

2.      Whether summary judgment evidence establishes that the Officers used unreasonable force, failed to prevent another officer from so doing, or failed to provide him essential medical care?

3.      Whether any of the Officers violated clearly established law?

4.      Whether Plaintiffs raise a genuine material fact issue of municipal liability under 42 U.S.C. § 1983 for a single, isolated alleged unconstitutional act?

5.      Whether Plaintiffs raise a genuine material fact issue that the City violated the Americans with Disabilities Act or Rehabilitation Act?

## SUMMARY OF THE ARGUMENT

6.      There is no evidence from which a jury could reasonably find that the Officers or the City deprived Shaw of a federally protected right. There is no legal authority or evidence which shows Officer Aguirre, Marroquin, McCain or Whitehead violated the Fourth Amendment or denied Shaw essential medical care. Instead, the evidence establishes that the objectively reasonable force Officers Aguirre,

1

Marroquin, McCain and Whitehead used was necessary to stop the threat of harm Shaw's actions created, and necessary to provide Shaw access to medical care. Additionally, the Officers are qualifiedly immune because Plaintiffs failed to identify legal authority or evidence which shows that any Defendant violated clearly established law. Existing legal authority did not fairly warn Officer Aguirre, Marroquin, McCain or Whitehead their actions were clearly unlawful. There is also no evidence from which a jury could reasonably find that a City policy was the moving force that directly caused a violation of Shaw's protected rights. There is no evidence that Shaw was denied benefits of, any service, program, or activity because of discrimination on the basis of Shaw's actual or perceived disability.

SUMMARY OF EVIDENCE

7.     At 2:33 a.m., on March 28, 2019 Pasadena police officer Arguetta arrested Shaw and charged him with public intoxication other than alcohol. Officer Arguetta observed Shaw having slurred speech and red watery eyes. Officer Arguetta took Shaw to the City's lock-up and officers booked Shaw into the facility. [Exs. 6, 7].

8.     At 6:07 a.m., Pasadena Police Service Officer ("PSO") Joanna Marroquin placed Shaw into detention Cell H without incident. [Exs. 3, 6, 7]. Around 6:15 a.m., a video recording demonstrates Shaw fell to the floor due to an apparent seizure.

[Exs. 3, 6, 9].[1] Other detainees being held in Cell H alerted staff. [Exs. 2–4, 6, 7, 12, p. 45, l. 25 – p. 46, l. 12]. At 6:16 a.m., PSO Marroquin observed Cell H and made a call on the police radio requesting emergency medical services. [Exs. 2, 3, 4, 13, p. 47, ll. 8–16]. Within one minute of that radio transmission, PSO Ryan Whitehead and PSO Marroquin entered Cell H and removed detainees other than Shaw to another cell.  [Exs. 3, 4, 6, 12, p. 46, l. 19 – p. 47, l. 10, 13, p. 34, ll. 12–24, p. 35, l. 14 – p. 36, l. 12, 13, p. 38, l. 20 – p. 39, l. 3].

9.     At 6:17 a.m., PSO Marroquin and PSO Whitehead entered Cell H. Initially Shaw was lying on his side where he made up and down movements with his head. [Exs. 3, 4, 6, 9, 12, p. 47, ll. 11-14, 13, p. 38 ll. 17-19, p. 41, l. 24 – 42, l. 16, 13, p. 42, l. 24 – p. 43, l. 18]. Shaw thereafter rolled onto his back. [Exs. 6, 9]. Continuing to 6:18 a.m., PSO Marroquin and PSO Whitehead used their hands to Shaw's back and shoulder area to keep him away from a wall.

10.     After Shaw's apparent seizure ended, he unexpectedly began to kick, swat, and bite PSO Marroquin and PSO Whitehead. [Exs. 3, 4, 6, 9, 12, p. 47, l. 22 – p. 48, l. 5, p. 48, ll. 20-24, 13, p. 43, l. 19 – p. 44, l. 10]. Between 6:18 and 6:21 a.m., PSO Whitehead and PSO Marroquin attempted to control Shaw but he continued to resist officers by spinning around and kicking. [Exs. 3, 4, 6, 9, 13, p. 46, ll. 3–19].

---

[1] For purposes of summary judgment, the primary relevant video [Ex. 9] is entitled "H-2019-03-28_06h05min29s766ms. The video's time stamp matches the time of the events detailed in this motion.

The officers used soft hand techniques at first with progressively greater use of hands in attempts to restrain Shaw. [Exs. 3, 4, 6, 9, 12, p. 47, ll. 18–25].

11.    At 6:21:51 a.m., PSO Marroquin removed her Taser after the hands-on techniques were inadequate in gaining control over Shaw. [Exs. 3, 4, 6, 9, 12, p. 49, ll. 17–24, 13, p. 48, ll. 3–10]. PSO Marroquin attempted to deploy her Taser to Shaw's left side at 6:21:54 a.m. and 6:21:57 a.m. At 6:22:07 a.m., PSO Marroquin attempted to employ a drive-stun, pain compliance Taser technique, but was not able to keep the Taser in contact with Shaw's body due to Shaw's body movements. [Exs. 3, 4, 6, 9, 12, p. 51, ll. 8–24, 13, p. 52, ll. 11–14]. At 6:22:11 a.m. and 6:2:18 a.m., Shaw kicked PSO Maroquin. [Exs. 3, 4, 6, 9]. PSO Marroquin again unsuccessfully attempted to use the Taser in drive-stun mode but this strategy was inadequate for the need. [Exs. 3, 4, 6, 9, 12, p. 55, ll. 9–22, 17].

12.    During this time, PSO Whitehead was also attempting to restrain Shaw with a hands-on technique. [Exs. 4, 13, p. 58, l. 25 – p. 59, l. 6]. At 6:22:34 a.m., PSO Whitehead lost hand-on contact with Shaw and Shaw rolled away and stood up. [Exs. 3, 4, 6, 9, 12, p. 58, l. 6 – p. 60, l. 2, 13, p. 59, l. 16 – p. 60, l. 13].

13.    At 6:22:40 a.m., PSO Marroquin picked up the Taser cartridge, placed it into the Taser, and gave it to PSO Whitehead. [Exs. 3, 4, 6, 9, 12, p. 60, l. 25 – p. 61, l .4]. At 6:22:49 a.m., PSO Supervisor Darlene McCain entered Cell H. Shaw then moved toward PSO Whitehead, who deployed the Taser again. [Exs. 2, 3, 4, 6, 9,

4

12, p. 60, l. 7 – p. 61, l. 14, 13, p. 62, ll. 2–12, p. 62, l. 20 – p. 63, l. 25, 11 p. 35, ll. 9–14, p. 54, l. 4 – 66, l. 4]. The Taser deployment was effective in moving Shaw to the floor, after which Shaw kicked at PSO Whitehead. [Exs. 3, 4, 6, 9, 13, p. 65, ll. 4–24, 17, 11, p. 57, ll. 13–20]. At 6:23:02 a.m., PSO Supervisor McCain grasped Shaw's right hand to move him to the center of the cell. [Exs. 2, 3, 4, 6, 9, 13, p. 65, l. 25 – p. 66, l. 6, Ex. 11, p. 56, ll. 22–24; 13, p. 62, ll. 21–25]. PSO Whitehead deployed the Taser again because Shaw was still kicking PSO Marroquin's legs. [Exs. 2, 3, 4, 6, 9, 13, p. 66, ll. 4–17]. PSO Marroquin grabbed Shaw's left hand in an attempt to control him. [Exs. 2, 3, 4, 6, 9, 11, p. 60, ll. 12–19]. The video demonstrates that none of the officers were able to control Shaw's active resistance. [Exs. 6, 9].

14.     At 6:23 a.m., the Acadian ambulance arrived in the sally port of the City's lock-up. [Exs. 2, 3, 4, 6, 12, p. 65, ll. 6–10, 11, p. 66, ll. 10–14]. Shaw was still actively resisting as he rolled on the ground. [Exs. 2, 4, 6, 9].

15.     At 6:24:40 a.m., Pasadena police officer Martin E. Aguirre entered Cell H. [Exs. 1, 2, 3, 4, 6, 9, 12, p. 66, ll. 13–17, 13, p. 71, ll. 4–6, 10, p. 63, l. 6 – p. 67, l. 15]. Officer Aguirre took control of Shaw's hand. [Exs. 1, 2, 3, 4, 6, 9, 13, p. 71, ll. 10–24, 10, p. 67, l. 15 – p. 68, l. 4]. Utilizing a hands-on technique and despite Shaw's continued active resistance, Officer Aguirre with assistance from PSO Whitehead, PSO Marroquin, and PSO Supervisor McCain successfully handcuffed

Shaw. [Exs. 1, 2, 3, 4, 6, 9, 12, p. 66, ll. 18–21, 13, p. 71, ll. 10–24, 11, p. 60, l. 20 – p. 61, l. 2, 10, p. 70, l. 13 – p. 71, l. 8, p. 74, ll. 7–14].

16.     At 6:24:50 a.m., emergency medical personnel entered the lock-up with a stretcher. [Exs. 1, 2, 3, 4, 6, 9, 12, p. 72, ll. 2–3]. The Officers successfully handcuffed Shaw by 6:26:30 a.m. [Exs. 1, 2, 3, 4, 6, 9]. At 6:27:27 a.m., Marroquin exited Cell H to retrieve a restraint chair. [Exs. 3, 6]. Shaw attempted to headbutt Aguirre when he and Whitehead moved Shaw to the restraint chair. [Ex. 1, 6].

17.     At 6:28 a.m., the Officers successfully placed Shaw into the restraint chair. [Exs. 1, 2, 3, 4, 6, 12, p. 72,  ll. 9–13, 72, l. 22 – p. 73, l. 2, 13, p. 72, ll. 12–17, 10, p. 78, ll. 10–11]. The officers moved Shaw to the booking area for evaluation by Acadian Ambulance Paramedics. [Exs. 6, 13, p. 73, ll. 5–11, 10, p. 77, l. 21 – p. 78, l. 9]. Medical personnel administered two injections to calm Shaw's aggressive behavior. [Exs. 1, 3, 4, 6, 12, p. 73, ll. 9–13, 13, p. 76, l. 14 – p. 77, l. 5, 10, p. 79, ll. 15–23]. Shaw remained in the chair from 6:30 a.m. to 6:47 a.m. [Exs. 6, 9]. Shaw continued to resist aid when Shaw was placed on the stretcher. [Exs. 1, 3, 4, 6, 9, 10, p. 78, l. 25 – p. 79, l. 14]. Officer Aguirre held Shaw's legs until paramedics secured stretcher cross straps. [Exs. 1, 3, 4, 6, 9]. Officer Aguirre relocated the handcuffs to Shaw's right wrist, which Officer Aguirre secured to the stretcher handrail. [Exs. 1, 3, 4, 6, 9, 10, p. 80, ll. 1–7]. At 6:51 a.m., paramedics loaded Shaw into the ambulance and it exited the lock-up's sally part at 6:57 a.m. [Exs. 3, 4, 6].

## ARGUMENT AND AUTHORITIES

18.     Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Factual disputes are material if they "might affect the outcome of the suit under the governing law," and they are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, an individual defendant asserts qualified immunity, plaintiff "must rebut the defense by establishing a genuine fact issue as to whether the official's alleged wrongful conduct violated clearly established law. *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018).

## I.      The Officers did not violate the Constitution.

### A.      The evidence proves the Officers exercised reasonable force in response to Shaw's resistance.

19.     "The **'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight**." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (emphasis added). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Because the Fourth Amendment

7

only requires reasonable action, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205 (2001). "The question is not whether the officer actually believed that the suspect posed a threat of serious harm but whether a 'competent officer could have believed' as much." *Mendez v. Poitevant,* 823 F.3d 326, 331 (5th Cir. 2016) (citing *City & Cty of San Francisco v. Sheehan*, 575 U.S. 600, 615 (2015)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

20.     Evaluating the reasonableness of the Officers' actions "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. PSO Marroquin and PSO Whitehead varied  the force they used as necessary to control Shaw. [Ex. 3, 4]. Both used hands-on techniques before employing a Taser, [Ex. 3, 4], which is an intermediate-force weapon, [Ex. 5].

21.     There is no evidence that any force used caused Shaw's death, or that the force used was objectively unreasonable or clearly excessive to the need under the circumstances. *See Ontiveros v. City of Rosenberg,* 564 F.3d 379, 382 (5th Cir. 2009). Officers used force necessary to secure Shaw to preventing him from injuring

himself and to get medical aid. [Exs. 1, 2, 3, 4]. The video demonstrates that officers responded to resistance from Shaw [Ex. 9]. Expert testimony shows this as well. [Ex. 6].

**B.    The individual officer defendants did not violate Shaw's rights on Plaintiffs' asserted theory of bystander liability.**

22.    Plaintiffs have sued *all* the individual officer defendants based upon a bystander theory as to each other in undifferentiated conclusory allegations. [Doc. 15, ¶ 85]. "[A]n officer many be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3)  chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013), *cert. denied Whitley v. Hanna*, 134 S. Ct. 1935 (2017) (internal quotation marks omitted). "[B]ystander liability requires more than mere presence in the vicinity of the violation," *Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020), and is "generally recognized [only] in the excessive force context." *Frakes v. Masden*, No. H-14-1753, 2015 U.S. Dist. LEXIS 159158, at *24 (S.D. Tex. 2015), *aff'd sub nom. Frakes v. Ott*, 668 F. App'x 130 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 835 (2017).

23.    Because the summary judgment evidence demonstrates none of the Officers violated Shaw's rights, there is no summary judgment evidence that any knew of a fellow officer violating Shaw's constitutional rights. Further, the officer's defendants have all declared that no other used greater force than necessary to

restrain Shaw. [Exs. 1, 2, 3, 4]. Chief Bruegger concurs in this assessment, [Ex.5], as does Defendants' expert, [Ex. 6], after his review of the incident's video, [Ex. 9].

### C. The Officers did not deprive Shaw of essential medical care.

24. Shaw was promptly provided access to essential medical care. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). PSO Marroquin called for medical care upon arriving at Shaw's cell. [Exs. 3, 4]. The officer Defendants restrained Shaw to achieve a safe environment for emergency medical personnel to provide Shaw necessary care. [Exs. 1, 2, 3, 4].

## II. Plaintiffs failed to refute the Officers' immunity.

### A. Existing *legal authority* did not fairly warn the Officers' that their actions were clearly unlawful.

25. Even if Plaintiffs could identify disputed evidence regarding whether any officer defendant violated Shaw's rights, Plaintiffs failed to disprove qualified immunity. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "The second question—whether the officer violated clearly established law—is a doozy," *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019), "[a]nd the burden is heavy: A right is clearly established only if relevant precedent "'ha[s] placed the * * * constitutional question beyond debate.'" *Id.* (quoting, *Ashcroft v. al-Kidd*, 563 U.S.

731, 741 (2011)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). It is marked by "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

26.     Because the clearly established law prong protects "all but the plainly incompetent or those who knowingly violate the law," *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018), the Supreme Court has recently and "repeatedly told Courts * * * not to define clearly established law at a high level of generality," *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). The specificity of the contours of the recognized federal right is important. *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021). The Supreme Court has never held that anything other than Supreme Court decisions may "clearly establish" the law sufficient to deny an individual the presumption of immunity. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021).

27.     Specificity is especially important in the excessive-force context. *Id.* at 11 (citing *Mullenex*, 577 U.S. at 12). "It is not enough that a rule be suggested by then-existing precedent; the 'rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 11 (quoting *Wesby*, 138 S. Ct. at 590) (internal quotation marks). To refute

11

immunity, Plaintiffs must demonstrate, through governing legal standards, the evidence establishes no reasonable officer could have believed that the force used to restrain Shaw was lawful. *See Saldana v. Garza*, 684 F.2d 1159, 1164–65 (5th Cir. 1982); *see also Rivas-Villegas*, 142 S. Ct. 4, 8–9 (officer entitled to qualified immunity because plaintiff and court of appeals failed to identify a Supreme Court case that addressed specifically similar facts). The bedrock of immunity is fair notice to every officer warning that particular conduct is clearly unlawful in the specific circumstances the officer encounters. *Brosseau v. Haugen*, 543 U.S. 194, 205 (2004).

28.     Plaintiffs fail to overcome the Officers' immunity because caselaw at the time of Shaw's incarceration does not clearly establish that the officers' reaction to Shaw's resistance was clearly unlawful. [Exs. 1, 2, 3, 4]. The Officers are immune unless Plaintiffs "can identify a case [opinion] where an officer acting under similar circumstances * * * was held to have violated the Fourth Amendment," *White v. Pauly*, 137 S. Ct. 548, 551 (2017); *Vann*, 884 F.3d at 310; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017), and Plaintiffs cannot do so.

29.     In *Wagner v. Bay City*, 227 F.3d 316 (5th Cir. 2000), for example, decedent Gilbert Gutierrez initiated a violent physical altercation with the defendant-officers – "swinging his fists[] [and] striking" them. *Id.* at 318. The officers placed Gutierrez in the prone position with bodyweight force on his back while they applied

12

handcuffs. *Id.* at 319. Once restrained, the officers placed Gutierrez face down in the prone position in the patrol car to be transported to jail. *Id.* at 323–24. The Fifth Circuit – reversing and rendering judgment on interlocutory appeal – held that the use of force was reasonable because Gutierrez had violently continued to resist arrest during the officers' use of force and "there were no apparent physical signs that Gutierrez was substantially at risk" of asphyxiation. *Id.* at 324.

30.     Here, the Officers used a Taser –  an intermediate-force option – to respond to a detainee who was actively resisting restraint. [Exs. 3, 4, 5]. The Officers, moreover, placed Shaw on his side so as his breathing would not be inhibited by body position. [Exs. 1, 2, 3, 4]. Even more compelling than the facts in *Wagner*, the officer Defendants were restraining Shaw to provide him *needed medical care*. Further, use of a Taser, [Exs. 3, 4, 5] – was safer than the force officers used in Gutierrez – prone position with bodyweight – which this Court's precedents at the time of Shaw's arrest authorized. Controlling legal authorities accordingly support the Officers' immunity. *White*, 137 S. Ct. at 551.

> **B.     Plaintiffs fail to identify *evidence* which would have informed every reasonable officer that the Officers' reaction to Shaw's resistance was clearly unlawful.**

31.     The Court need not reach this separate ground that independently supports the individual officer defendants' immunity because no legal opinion provided fair notice to the Officers that their actions were clearly unlawful. *See Kisela*, 138 S. Ct.

at 1152–54. Nevertheless, the record alternatively establishes a separate ground for immunity. Only *after* a plaintiff identifies relevant clearly established law, does appropriate application of immunity entail a further determination of whether the protected right allegedly violated, considering the **specific factual circumstances of the case**, was so clearly established in a particularized sense at the defendant officers acted, that **no objective officer** could have reasonably believed the challenged action was lawful. *Brosseau*, 543 U.S. at 198; *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990). The "court must ask whether the law so clearly and unambiguously prohibited [officer's] conduct that every reasonable [officer] would understand that what he is doing violates [the law]." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (alternation in original) (internal quotation marks omitted).

32.     The evidence establishes that an objective officer could have reasonably believed the Officers' actions were lawful in light of the threats to their safety and the need to restrain Shaw to provide medical care. In fact, internal affairs thoroughly investigated the incident and the Department's civilian director exonerated the Officers. [Ex. 7, Pasadena_18 to Pasadena_20]. Chief Bruegger also determined that each Officer's force was justified. [Ex. 5].

### III. The City did not violate Shaw's rights.

33.    "The premise that the theory of respondeat superior does not apply in section 1983 actions brought against a municipality has become well entrenched in our jurisprudence." *Worsham v. Pasadena*, 881 F.2d 1336, 1339 (5th Cir. 1989). "[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 400 (1997) (internal citations omitted).

34.    Thus, to support a claim of the *rare case* of municipal liability for a constitutional violation, after establishing a claim of a constitutional violation by a governmental actor, a plaintiff must prove: (1) an unconstitutional City policy existed; (2) actual acceptance of the unconstitutional policy by the City's policymaker; and (3) that the plaintiff was not only subjected to a demonstrable constitutional deprivation but further that the unconstitutional conduct occurred *because of* the execution of the specific governmental policy identified. *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.) (en banc), *cert. denied*, 472 U.S. 1016 (1985). This Court has referred to these requisite elements as the "attribution principles." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001):

> The three attribution principles identified here - a policymaker, an official policy and the "moving force" of the policy - are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the

15

government itself. Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

**A.    The City is entitled to judgment because Shaw was not deprived of any right.**

35.    Because Shaw was not deprived of a right, privilege, or immunity protected by the Constitution and laws of the United States, the City is entitled to summary judgment on Plaintiffs' municipal liability claims. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986); *Rios v. City of Del Rio*, 444 F.3d 417, 426 (5th Cir. 2006).

**B.    There is no evidence of an unconstitutional City policy promulgated or adopted by the City's policymaker.**

36.    The evidence does not show any City policy created or promulgated by the City's policymaker, the city council. "Allegations of an isolated incident are not sufficient to show the existence of a **custom or policy**." *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (emphasis added). Plaintiffs also cannot point to a policymaker or the policymaker's deliberate indifference.

**1.    Plaintiffs have not pointed to an actual policy that caused Shaw's death.**

37.    The Constitution provides protections from a governmental agency causing a constitutional deprivation but it does not effectively require a governmental entity to enact a transcendent policy that prevents law enforcement officers from using excessive force. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005); *Pineda v. City of Houston*, 291 F.3d 325, 333 (5th Cir. 2002). The City's use-of-

force and electronic-control-weapon policies are not unusual. [Ex. 5]. They are in line with governing Texas law. [Ex. 5.]

### 2. City Council is the City's policymaker.

38.    Regardless of whatever policy Plaintiffs assert as unconstitutional, Plaintiffs also have to show that such was promulgated or adopted by the City's policymaker. Under Texas law, the city's counsel is customarily the policymaker for a city. *See City of San Antonio v. Rodriquez*, 856 S.W.2d 552, 559 (Tex. App.—San Antonio 1993, writ denied). "Liability must rest on official policy, meaning on the city government's policy, and not on the policy of an individual official." *City of Gladewater v. Pike*, 727 S.W.2d 514, 525 (Tex. 1987); *see also* TEX. LOC. GOV'T CODE Chapters 21 and 51.

39.    A governmental employee is not a "policymaker" unless the governmental entity, through its lawmakers, has **delegated exclusive policymaking authority** to that employee such that the City cannot review the decisions or actions of the employee. *See Worsham*, 881 F.2d at 1340–41; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

40.    The Charter expressly reserves to Council the power to inquire into the official conduct of any department, agency, office, officer, or employee of the City, and into any other matters of proper concern to City government. [Ex. 23, § 5]. The Council operates as a singular body and acts through ordinances. [*Id.* § 10]. No Charter,

17

Ordinance provision, or Resolution has delegated the City's policymaking authority to the Chief of Police. [*Id*.]. The chief's operational authority is subordinate to Council's policymaking authority and no ordinance has delegated its policymaking authority to the chief. [*Id*.]. The City's elected Council is the City's policymaker.

### 3. There is no evidence the City's policymaker was deliberately indifferent to Shaw's rights.

41.   "To establish [governmental] liability on the theory that a facially lawful [governmental] action has led an employee to violate [Argueta's] rights, [Plaintiffs] must demonstrate that the [governmental] action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [governmental policymaking] actor disregarded a known or obvious consequence of his action." *Id.* at 410." "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (internal citations omitted). There is no evidence the City's policymaker was deliberately indifferent to Shaw's rights. Texas criminal law prohibits all officers from using unnecessary or excessive force, Tex. Penal Code §§ 9.51–9.54, governs law enforcement use of force.

42.   Pasadena police officers and Police Service Officers, are trained and supervised to assure officers are appropriately guided to follow the law, City policy,

and police department regulations. [Exs. 1, 2, 3, 4, 5]. All of the individual officer defendants received training via an academy. [Exs. 1, 2, 3, 4, 5]. After the academy, all the individual officer defendants completed a field training officer (FTO) program. [Exs. 1, 2, 3, 4, 5].

43.     The City has no policy that directs, or authorizes, officers to violate federal law or constitutional protections. The City demands through its policies, including the police Oath of Office, and police department regulations, that the City's officers comply with the requirements of the Constitutions and laws of the United States and Texas. The City's policymaker has no reason to believe any City policy or police departmental regulation that addresses use of force against or provision of medical care of a detainee is deficient or inadequate. [Exs. 5, 21, 22, 24].

### C.     Plaintiffs cannot demonstrate that an existing City policy was the "moving force" of any alleged deprivation of Shaw's rights.

44.     The alleged policy or custom must be the "moving force" which, *by its operation causes,* the alleged constitutional violation. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). Plaintiffs have not identified admissible evidence of an unconstitutional, or even inadequate City policy. *See Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir.) (*en banc*), *cert. denied*, 472 U.S. 1016 (1985). The City is entitled to insist Plaintiffs clearly identify a specific policy for which the City's policymaker could be held liable, *Piotrowski*, 237 F.3d at 578–81, and

Plaintiffs have not pointed what policy caused the violation beyond mere conclusions.

45.     It is crucial that the requirements of governmental culpability and governmental causation "not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id.* at 579 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). Plaintiffs fail to provide evidence which show that any City policy was a moving force that directly caused a violation of Shaw's rights.

## IV.   There is no evidence that Shaw was denied a benefit of a perceived or actual disability.

46.     Under the Americans with Disabilities Act (and parallel Rehabilitation Act) Plaintiffs must adduce evidence demonstrating that (1) Shaw was a qualified individual under the ADA; (2) Shaw was denied benefits by the City, or is otherwise being discriminated against by the City; and (3) such denial of benefits or discrimination is by reason of his disability. *Windham v. Harris Cnty.*, 875 F.3d 229, 235 (5th Cir. 2017) (internal citations omitted). Neither the City nor Officer Aguirre, PSO McCain, PSO Marroquin, or PSO Whitehead prevented Shaw from enjoying any government benefit. [Exs. 1, 2, 3, 4, 5]. To recover compensatory damages, Plaintiffs must demonstrate that any discrimination against Shaw was intentional. *Windam*, 875 F.3d at 235 n.5. The Officers did not intentionally discriminate against Shaw based on any perceived or actual disability. [Exs. 1, 2, 3, 4].

## CONCLUSION AND PRAYER

47.    For each of these reasons, the Court should grant summary judgment to Defendants Officers Martin Aguirre, Joanna Marroquin, Darlene McCain, Ryan Whitehead, and the City of Pasadena.

Respectfully submitted,

By:  /s/ *Justin C. Pfeiffer*
William S. Helfand
Attorney-in-Charge
SBOT: 09388250
Southern District of Texas Bar No. 8791
Norman Ray Giles
SBOT: 24014084
Southern District of Texas Bar No. 26966
Justin C. Pfeiffer
Texas Bar No. 24091473
S.D. Tex. Bar No. 2533035
Bill.Helfand@LewisBrisbois.com
Norman.Giles@LewisBrisbois.com
Justin.Pfeiffer@LewisBrisbois.com

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 659-6767
Facsimile: (713) 759-6830
ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to the following counsel of record in accordance with the District's ECF service rules on this 3rd day of January, 2022.

T. Dean Malone
dean@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Lake Jackson Street, Suite 730
Dallas, Texas 75202
*Attorneys for Plaintiffs*

/s/ *Justin C. Pfeiffer*